IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                          Case No. 3:15cr55

MOHAMED M. EL SHAMY,

      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Mohamed M. El Shamy's Motions for

Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF

No. 95, 101.) The United States responded in opposition (the "Opposition"). (ECF No. 107.) El

Shamy replied. (ECF No. 110.) The matter is ripe for disposition. The Court dispenses with

oral argument because the materials before it adequately present the facts and legal contentions,

and argument would not aid the decisional process. For the reasons that follow, the Court will

grant in part the Motion for Compassionate Release and reduce El Shamy's sentence to 168

months.

## I. Background

On April 16, 2015, El Shamy pled guilty to two counts of possessing and brandishing a

firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and

aiding and abetting such crime. (Plea Agreement, ECF No. 59.) The Presentence Report

("PSR") describes the conduct underlying El Shamy's offenses. (PSR ¶ 8, ECF No. 68). El

Shamy participated in a scheme to rob various cigarette distributors. (*Id.*) On November 14,

2014, two co-conspirators robbed a Costco while brandishing a firearm. (*Id.*) Immediately after

this robbery, El Shamy met with the conspirators, helped transfer the contraband to a different

vehicle, and paid the conspirators for committing the robbery. (*Id.*) Roughly four months later, on February 9, 2015, El Shamy and other conspirators planned to rob a different cigarette distributor. (*Id.*) The conspirators committed the robbery while El Shamy waited nearby to retrieve the vehicle used in the commission of the crime and to share in the robbery proceeds. (*Id.*) El Shamy participated in two other similar violent robberies on November 11, 2014 and January 7, 2015. (*Id.*)

Prior to sentencing, the probation office prepared the PSR for El Shamy, summarizing his criminal history. El Shamy fell into criminal history category III based on his prior convictions. (PSR 13.) In 2007 and again in 2013, El Shamy was convicted of assault and battery in state court. (*Id.* ¶ 39.) El Shamy also had convictions for failure to appear and for various driving offenses. (*Id.* 10–13.)

As stated in the PSR, the mandatory penalties for § 924(c) offenses established the relevant Sentencing Guidelines range. (*Id.* 18.) When El Shamy committed his crimes, a second or subsequent count of conviction under § 924(c) triggered a higher mandatory minimum penalty, as well as mandatory "stacking" of these sentences for each count of conviction.[1] Thus, a defendant such as El Shamy who faced two or more counts for possessing and brandishing a firearm, in violation of § 924(c)(1)(A)(ii), in a single charging instrument would receive a mandatory minimum sentence of seven years on the first count, and twenty-five years on each additional count. (*Id.* 19.) In accordance with the penalties specified in § 924(c), the Court sentenced El Shamy to the mandatory minimum sentence applicable at the time of his

---

[1] This was so because, in *Deal v. United States*, 508 U.S. 129 (1993), the United States Supreme Court held that even when multiple counts under § 924(c) were in the same indictment, the conviction on the first count did not have to be final before triggering the mandatory increases and stacking provisions.

sentencing: 84 months on the first § 924(c) offense and a consecutive 300 months on the second § 924(c) offense, for a total sentence of 384 months' imprisonment. (J. 2, ECF No. 80.)

El Shamy appealed his convictions and sentence. After the Court sentenced El Shamy, Congress enacted the First Step Act of 2018 and modified the penalties applicable to defendants who, like El Shamy, face stacked § 924(c)(1)(A)(ii) convictions at sentencing. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020) ("The First Step Act ended this practice, known as sentence 'stacking,' by clarifying that the 25-year mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and already has become final." (internal quotation marks and citations omitted)). As a result, multiple § 924(c) offenses brought in the same charging instrument no longer trigger a twenty-five-year mandatory minimum consecutive sentence. The United States Court of Appeals for the Fourth Circuit, finding that the First Step Act did not apply to cases in which the defendant was sentenced before the Act's effective date, affirmed the judgment of this Court. *United States v. El Shamy*, 805 F. App'x 215, 216 (4th Cir. 2020). As a result, defendants sentenced after 2018 for two § 924(c)(1)(A)(ii) offenses face a mandatory minimum fourteen-year sentence, but El Shamy remains subject to the thirty-two-year mandatory minimum sentence that he received in 2015.

El Shamy is currently housed at Gilmer FCI. The Bureau of Prisons ("BOP") states that El Shamy will be released on August 21, 2042. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/.

On November 2, 2020, El Shamy submitted a request for compassionate release to the Warden of FCI Gilmer. (ECF No. 95–1). On December 31, 2020, the Warden denied El Shamy's request. (Resp. 3, ECF No. 107.) On December 30, 2020, El Shamy filed his *pro se* Motion for Compassionate Release. (ECF No. 95.) Upon review, the Court appointed El Shamy

counsel. (ECF No. 96.) On February 24, 2021, Counsel filed the instant Motion for Compassionate Release. (ECF No. 101.)

In the Motion, El Shamy advances two reasons why the Court should find extraordinary and compelling reasons exist in his case that warrant granting him compassionate release. (Mot 6–7, ECF No. 101.) First, El Shamy cites "the disparity in [his] pre-First Step Act sentence and the sentence he would have received under current law." (*Id.* 6.) Second, El Shamy argues that a sentence reduction is appropriate because "the COVID-19 pandemic, in conjunction with other case-specific factors, constitutes an 'extraordinary and compelling' reason warranting relief." (*Id.* 7.) El Shamy, now forty-two-years old, suffers from "hypertension, atypical chest pain, morbid obesity with a body mass index of 45 – 49.9 kg/m2, high cholesterol, anxiety, depression; . . . coronary artery disease, having suffered two heart attacks . . . [and] a myochardial ischemia in the inferior wall of his heart." (*Id.*) The PSR provided similar information on El Shamy's physical condition prior to sentencing, confirming that he described his "overall physical health as generally poor." (PSR ¶ 70.) In support of his request for compassionate release, El Shamy avers that he has "used his time well while incarcerated," taking many classes while in prison and rehabilitating himself. (Mot. 14.) Counsel for El Shamy also surmises that an immigration detainer may exist for El Shamy given that he committed a violent offense while in the United States on a green card. (*Id.* 13 n.14.)

The United States opposes El Shamy's request for compassionate release, arguing that because he is now "fully vaccinated" against COVID-19 he no longer faces a particularized susceptibility to the virus. (Opp'n 8, 16, ECF No. 107.) The United States further contends that the sentence disparity is not as great as El Shamy suggests because if the Court were to sentence him "today on the charges that he has admitted to in a sworn statement, [he] would be facing 7

4

years for each of the four firearm brandishing charges, . . . [for] a total of 28 years of mandatory

and consecutive imprisonment." (*Id.* 13.) The United States asserts that El Shamy "has served

only 19% of his 384-month sentence, such that compassionate release would not provide

adequate deterrence" for his criminal conduct. (*Id.* 23.) The United States also observes that

while in prison El Shamy "has been sanctioned twice for fighting, and once for unauthorized use

of the telephone." (*Id.* 24.)

As of July 29, 2021, Gilmer FCI reports that 142 staff members and 1092 inmates have

received COVID-19 vaccines. *See* Bureau of Prisons, *COVID-19*,

https://www.bop.gov/coronavirus. Also, as of July 29, 2021, the BOP reports zero active

COVID-19 cases at Gilmer FCI. *Id.*

## II. Legal Standard:  Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the

opportunity to directly petition the courts for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A).[2] Prior to the First Step Act in 2018, the BOP had the sole authority to petition

the court for sentence modifications on compassionate release grounds. *Coleman v. United*

---

[2] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except
that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of
Prisons, or upon motion of the defendant after the defendant has fully exhausted all
administrative rights to appeal a failure of the Bureau of Prisons to bring a motion
on the defendant's behalf or the lapse of 30 days from the receipt of such a request
by the warden of the defendant's facility, whichever is earlier, may reduce the term
of imprisonment (and may impose a term of probation or supervised release with
or without conditions that does not exceed the unserved portion of the original term
of imprisonment), after considering the factors set forth in section 3553(a) to the
extent they are applicable, if it finds that—

*States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of

the First Step Act, criminal defendants may petition courts on their own initiative to modify their

sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18

U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set

forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and

other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir.

2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in

the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v.*

*McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to

§ 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient

grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

## A.     Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been

imposed," the defendant may bring a motion to modify his or her sentence "after the defendant

has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see*

*also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's

history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant

may proceed directly to district court if his [or her] request is not acted on within that time.").

---

> (i) extraordinary and compelling reasons warrant such a reduction . . . and
> that such a reduction is consistent with applicable policy statements issued
> by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

"Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or

her administrative remedies prior to bringing a motion before the district court." *Casey v. United

States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances.

*United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.).

Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]"

"'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of

agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*,

No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v.

United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a

vulnerable defendant with underlying health conditions, implicates all three exceptions justifying

a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329,

332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions

warrant a waiver of exhaustion requirements because of the ongoing risk of infection while

incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the

exhaustion requirement because exhaustion would be futile as defendant would not see thirty

days lapse before his release date).

**B.     Courts Must Find Extraordinary and Compelling Reasons Justifying
         Compassionate Release**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify

terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if

"extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

The United States Sentencing Commission further defines "extraordinary and compelling

reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr73, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[3]

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283; *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021) (concluding that § 1B1.13 does not apply to compassionate release

---

[3] The United States Sentencing Guideline § 1B1.13 provides that:

Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

motions that inmates (or counsel acting on behalf of inmates) file directly with the district court). Furthermore, the Guidelines, while helpful, are merely advisory and do not bind the Court.

Recognizing this, the Fourth Circuit has held that "courts may legitimately consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 285–86. Relevant here, in 2018 Congress modified the penalties applicable to defendants who, like El Shamy, face stacked § 924(c)(1)(A) convictions at sentencing. *See McCoy*, 981 F.3d at 275. As a result, courts have recognized that these changed penalties may provide an impetus for compassionate release. *See United States v. Redd*, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020) ("There is no doubt that there is a gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act.") (citation omitted).

If sentenced today, El Shamy would receive a mandatory minimum 14-year term of imprisonment rather than a mandatory minimum 32-year term. (*See* Plea Agreement 1 (pleading guilty to two counts of possessing and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii)). While Congress did not make this change retroactive, *United States v. Jordan*, 952 F.3d 160, 174 (4th Cir. 2020) (holding that the First Step Act's changes to § 924(c) do not apply retroactively to previously imposed sentences), the Fourth Circuit has indicated in the postconviction context that a district court may find it appropriate to consider the significant reductions to the statutory penalties that defendants with stacked § 924(c) convictions would face if sentenced today. *McCoy*, 981 F.3d at 279 (affirming district court's decision to grant sentence reduction, remarking there exists "nothing inconsistent about Congress's paired First Step Act judgments: that not all defendants convicted under § 924(c) should receive new sentences, but that the courts should be empowered to relieve some

defendants of those sentences on a case-by-case basis") (internal quotation marks and citations omitted).

> **C.      Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release**

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

## III. Analysis

After due consideration, the Court will grant the Motion in part and reduce El Shamy's sentence to 168 months.[4]

---

[4] The Fourth Circuit has not addressed in published authority whether granting compassionate release offers only the opportunity to impose a sentence of time served or whether a court may grant a partial sentence reduction. Absent such authority, and considering the record before it, the Court finds a reduction from 384 months' imprisonment to 168 months' imprisonment appropriate here.

Courts outside the Fourth Circuit have recognized that partial sentence reductions may be appropriate under First Step Act Section 603. For instance, a court in the Southern District of New York recently granted a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) for a 54-year-old inmate who, along with his co-defendant, ran a cocaine and heroin racketeering enterprise and who was found guilty by a jury of having participated in the torture and murder of a government confidential informant. *United States v. Rodriguez*, 492 F. Supp. 3d 306, 308 (S.D.N.Y. 2020). In *Rodriguez*, Judge Jed S. Rakoff found that the defendant had "undertaken extraordinary efforts at rehabilitation" that "weigh[ed] strongly in favor of a sentence reduction," and reduced the defendant's sentence from life to 30 years' imprisonment. *Id.* at 314. Although

The Court first determines that El Shamy has sufficiently exhausted his administrative remedies. It is exhausted in more than one way. The First Step Act, codified in § 3582(c)(1)(A), requires a defendant to exhaust his or her administrative remedies with the BOP before filing his or her own motion for compassionate release in the district court. *McCoy*, 981 F.3d at 283. "But Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time." *Id.* On November 2, 2020, El Shamy submitted a request for compassionate release to the Warden of FCI Gilmer. El Shamy filed his *pro se* Motion on December 30, 2020, more than 30 days after he submitted his request for compassionate release to the BOP. In any event, Counsel did not file the instant Motion for El Shamy until February 24, 2021, nearly two months after the Warden issued his decision on December 31, 2020 rejecting El Shamy's request for release.

Next, the Court finds that El Shamy offers "extraordinary and compelling reasons" to support his request for release. 18 U.S.C. § 3582(c)(1)(A)(i). Considering the specific circumstances of El Shamy's offenses, his 384-month sentence is "disproportionate to both 'the seriousness of the offense and to what Congress now deems appropriate for this kind of conduct.'" *McCoy*, 981 F.3d at 279 (quoting *United States v. Bryant*, No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md. Apr. 30, 2020)). Of course, the underlying robberies are serious offenses, and El Shamy did real and meaningful harm to the individuals his conspirators threatened with a gun during the course of his robberies; however, that same extremely serious

---

the court did not reduce the defendant's sentence to time served, Judge Rakoff observed that the United States Court of Appeals for the Second Circuit "recognized that the [compassionate release] statute provided . . . flexibility [in sentencing], *see United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020), thus allowing a [sentence reduction] in this case." *Id.*

conduct would subject a defendant to a mandatory minimum sentence of 14 years' imprisonment if sentenced today. In contrast, when the Court sentenced El Shamy three years before the enactment of the First Step Act, he faced a mandatory minimum sentence of 32 years.[5] Moreover, El Shamy had limited criminal history and had served no real prison time prior to committing the underlying offenses. *See McCoy*, 981 F.3d at 274 (affirming compassionate release in part based on the defendants' "lack of significant prior criminal history"). Given these specific characteristics of El Shamy and his offenses, the sentence imposed differs to a "dramatic degree" from "what Congress now deems appropriate," constituting an extraordinary and compelling reason to consider his request for compassionate release. *Id.* at 288.

El Shamy's medical conditions provide an additional basis for a sentence modification pursuant to § 3582. El Shamy has serious heart problems, hypertension, high cholesterol, anxiety, depression, and presents as obese. Given the severity of his chronic conditions, and the particular risk they pose to him in light of the ongoing COVID-19 pandemic, the Court finds that El Shamy's health problems are an extraordinary and compelling circumstance that support his request for relief.[6]

---

[5] The table below summarizes the differences in the statutory penalties applicable to El Shamy before and after the First Step Act of 2018:

|  | **Original Penalty for two § 924(c)(1)(A)(ii) offenses in the same charging document** | **First Step Act (modifying mandatory penalties for stacked § 924(c)(1)(A)(ii) offenses)** |
| --- | --- | --- |
| Mandatory minimum | 7 years (84 months) + 25 years (300 months) = 384 months | 7 years (84 months) + 7 years (84 months) = 168 months |
| Sentence Imposed | 384 months (J. 2, ECF No. 80.) | 168 months |

[6] The Court recognizes that COVID-19 cases are increasing across the United States because of the Delta variant. *See* NEW YORK TIMES, *Delta Variant Widens Gulf Between 'Two Americas': Vaccinated and Unvaccinated*, July 15, 2021, available at: https://www.nytimes.com/2021/07/14/health/delta-variant-uk-usa.html. Even with the increase

Even after finding that there are extraordinary and compelling grounds for a sentence modification under § 3582(c)(1)(A), a court still must consider any applicable 18 U.S.C. § 3553(a) factors. As discussed previously regarding the disproportionality of El Shamy's sentence, the Court finds that the nature and circumstances of the offense, and the characteristics of El Shamy, weigh in favor of granting him partial compassionate release. 18 U.S.C. § 3553(a)(1). El Shamy committed serious and dangerous offenses, for which he will serve a fourteen-year prison sentence after the Court grants him a partial sentence reduction. After serving his sentence, El Shamy will be fifty-seven years old. Although he was not young when he committed these offenses, the unique confluence of his age, health background, and lengthy sentence will adequately deter criminal conduct and protect the public. Furthermore, upon release, if not deported, El Shamy will begin to serve a five-year supervised release term. While El Shamy's fourteen-year sentence adequately deters criminal conduct, the seriousness of his offenses and the need to protect the public outweigh his request for immediate release. Additionally, his criminal history and his three disciplinary infractions while in federal detention history suggest that the Court should consider public safety and whether his sentence promotes respect for the law, also weighing against his immediate release.

El Shamy further contends that his Motion should be granted because he has engaged in BOP–sponsored education and vocational opportunities. In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d at 397–98. The Fourth Circuit has explained that if an individual is

---

in nationwide COVID-19 cases, the record before the Court does not justify El Shamy's immediate release.

13

eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397. El Shamy displays progress in his rehabilitation, and this Court commends his efforts while noticing his transgressions. However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). While El Shamy's good behavior and participation in GED programs during his limited time in prison are acknowledged, these measures do not warrant his immediate release in light of the seriousness of his convictions and the remaining time on his sentence.

## IV. Conclusion

For the reasons explained above, the Court will grant in part the Motions for Compassionate Release. (ECF No. 95, 101.)

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: July 29, 2021
Richmond, Virginia

14